Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,442-KA
No. 56,443-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

IKERRYUNT'A VERNELL STEWART          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 401,392

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Christopher Albert Aberle

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

COURTNEY RAY
ERIC MATTHEW WHITEHEAD
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and MARCOTTE, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable John Mosely, Jr., presiding. The defendant is Ikerryunt'a Stewart ("Stewart"). On April 16, 2024, he was charged with: (1) one count of second degree murder; (2) eight counts of attempted second degree murder; and (3) four counts of aggravated criminal damage to property. On May 6, 2024, Stewart pled guilty to one count of manslaughter and eight counts of attempted second degree murder. The trial court initially imposed a cumulative sentence of 110 years. On reconsideration, the trial court imposed a cumulative 65-year sentence: 30 years for manslaughter and 35-year concurrent sentences for each count of attempted second degree murder. The court ordered that the manslaughter sentence run consecutively to the sentences for attempted second degree murder. In this appeal, Stewart does not challenge his convictions; rather he assigns two errors regarding the alleged excessiveness of his sentences: (1) the cumulative 65-year sentence is constitutionally excessive; and (2) the trial court's order that the manslaughter sentence and attempted second degree murder sentences run consecutively renders the cumulative whole excessive.

**Guilty plea**

On May 6, 2024, Stewart pled guilty to the aforementioned crimes. In exchange for his plea of guilty to manslaughter (instead of the original charge of second degree murder), the state dismissed the four counts of aggravated criminal damage to property. Following Stewart's plea, the prosecution stipulated that Stewart's killing of Kel'vonte Daigre was committed in sudden heat of passion pursuant to La. R.S. 14:31(A)(1) —

thus giving Stewart a partial defense that he would have had the burden of proving at trial. Sentencing was left to the trial court.

The prosecution asserted the following factual basis for the plea, to which the defendant agreed:

> MS. RAY: On or about September 4, 2021, in [Shreveport,] Caddo Parish, Louisiana…Stewart was in a gray Kia Optima with Ja'shun Smith, Christopher Davenport and Rodney Lewis at the Circle K gas station at the intersection Youree Drive and East Bert Kouns, when…Stewart [and others] exited the vehicle, shooting approximately 50 rounds into the intersection.
>
> Stewart was armed with an AK-47-style handgun and fired 21 rounds. Then they all re-entered the car and fled the scene ultimately leading the police on a high-speed chase through Cedar Grove. When the pursuit…[came] to an end…Stewart exits the vehicle and fled on foot while carrying one of the guns used in the shooting, which resulted in the death of 13-year-old Kel'vonte Daigre, an injury to Kentravious Kennedy and Kaitlyn Harper.
>
> Additionally, Zuniga McGee and her two children Zyjerrica Butler and Telemacus McGee and John Harper and Dawn Sterling were all in their vehicles that were struck by gunfire and their lives were endangered by the actions of the defendant.
>
> …Stewart admitted to being involved in the shooting in text message[s] and Instagram messages. He stated to Nico Stewart…"We went on a bad chase"…[and asked] Nico to pick him up and sent him his location.
>
> Additionally, the defendant sent Instagram messages during the time he was hiding from the police,…[stating,] "I just had a bang out…Mane, on the West it started from Youree and I hopped out with the K on a white Honda. Laws got on our trail."
>
> These messages were sent to username Brat on Instagram and he said to thuglife on Instagram, quote, "Shunky with me. We just had a bang out at Circle-K," unquote. The shooting was captured on video and…Stewart can be seen wearing the clothes he was ultimately captured in as well as firing his weapon.
>
> While the State asserts that…Stewart committed the specific intent murder of Kel'vonte Daigre for the purposes of this plea, we stipulate that he committed it in the the sudden heat of passion or heat of blood…

2

Additionally, he committed eight counts of attempted second degree murder by firing 21 rounds into the intersection w[h]ere [sic] multiple people were present and vehicles struck by gunfire with the specific intent to kill.

….

THE COURT: All right. So did you hear the facts stated by the district attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And are those facts true?

THE DEFENDANT: Yes, sir.

**Presentence Investigation Report ("PSI")**

After the plea was entered on the record, the court ordered a presentence investigation report ("PSI"). The PSI revealed that Stewart was born April 9, 2004, making him 17 years old when he committed the crimes to which he pled guilty. Stewart's father died in 2006. Stewart dropped out of school after the ninth grade and admitted to smoking marijuana at least twice per day. He has a child who was born January 3, 2022, and has never been married. Notably, Stewart committed the manslaughter and attempted murders while his child's mother was nearing the end of her second trimester of pregnancy.

While Stewart had no prior adult convictions, he had been adjudicated delinquent (the equivalent of an adult criminal conviction) as a juvenile for illegal possession of a stolen firearm and illegal possession of a firearm by a juvenile.[1] Stewart was on felony juvenile probation when he committed this manslaughter and attempted murders.

Stewart declined to make a statement regarding his crimes.

---

[1] La. Ch. C. art. 804.

3

The family of 13-year-old Kel'vonte Daigre submitted a victim impact letter expressing their grief and tremendous sense of loss resulting from his death.

**Initial Sentencing**

On September 18, 2024, the court held a sentencing hearing. Stewart chose not to testify. Instead, defense counsel spoke on Stewart's behalf, asserting his remorse, acceptance of responsibility, potential for rehabilitation, and the fact that he chose not to burden the victim's family with a jury trial. Following defense counsel's oration, the trial court noted the defendant's lack of any expression of remorse, and the likelihood that the defendant would kill again if given the opportunity. Thereafter, the court imposed 30 years for the manslaughter conviction and 10 years for each count of attempted second degree murder. The court ordered that these sentences would all run consecutively.

**Reconsideration and resentencing**

On November 13, 2024, the trial court reduced the cumulative sentence to 65 years pursuant to the defendant's motion to reconsider sentence: 30 years for manslaughter and 35-year concurrent sentences for each count of attempted second degree murder. The trial court explained that the reduction was due to the defendant's youth (he was 17 years old at the time of the shooting) and the sentences imposed on the other defendants.

**Law**

In *State v. Boswell*, 56,200 (La. App. 2 Cir. 4/9/25) 409 So. 3d 491, we recently reiterated the law concerning excessive sentence claims:

> An excessive sentence claim is reviewed by examining whether the trial court adequately considered the

guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive.

Ordinarily, appellate review of sentences for excessiveness utilizes a two-prong process. However, when the motion to reconsider sentence raises only a claim of constitutional excessiveness, a defendant is relegated [under La. C. Cr. P. art. 881.1(E)] to review of the sentence on that ground alone.

Boswell, by failing to state specific grounds for his motion to reconsider sentence, has waived his right to have his sentence reviewed for compliance with art. 894.1. As a result, the remaining question is whether his sentence exceeds the punishment allowed by the state and federal constitutions.

The Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive.

The appellate court must determine if the sentence is constitutionally excessive. To assess a claim that a sentence violates La. Const. art. I, § 20, the appellate court must determine if the sentence is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.

The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. (Internal case citations omitted.)

"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La. R.S. 14:30.1. This is a statutorily mandated life sentence.

In contrast, the crime of manslaughter carries a maximum sentence of 40 years with no minimum limit. La. R.S. 14:31. Manslaughter is defined as follows:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.

La. R.S. 14:31(A)(1).

**Analysis**

The defense brief to this court asserts that Stewart's sentence is too harsh, i.e., that it constitutes "cruel or unusual" punishment. The defense brief claims that this is so because of: (1) Stewart's youth, specifically his 17-year-old brain was "not fully developed" when he opened fire with his AK-47 style handgun and sprayed bullets all over a busy traffic intersection; and (2) Stewart's potential for improvement, i.e., that as Stewart's brain fully develops while in prison, he will become more susceptible to education and rehabilitation.

We disagree. In addition to killing a 13-year-old boy, Stewart intentionally subjected an untold number of uninvolved bystanders to the risk of being shot merely for being in the wrong place at the wrong time. We note that Stewart makes no claim of developmental delay or mental impairment. Thus, the trial court could, should, and most likely did conclude that Stewart knew that spraying bullets into a busy traffic intersection is heinously wrong—and that he knew so before he did it. Stewart's lack of empathy and disregard for human life is both terrifying and unapologetic. His actions demonstrate that human life does not matter to

6

him.  The public's right to not be randomly shot while in traffic or in a parking lot matters much more to this court than a theoretical possibility that human life may begin to matter to Stewart in the future.

Stewart *chose* to accept the state's plea offer, *chose* to refrain from making any statement for inclusion in the PSI, and twice given the opportunity by the court to make a statement at sentencing, again, *chose* to decline comment and remained silent.  Additionally, we note that Stewart, in his plea deal, was granted the heat of passion defense.  A jury, however, may well have found him guilty of second degree murder, which carries a mandatory life sentence.[2]  This appeal is without merit.

Finally, we point out that the consecutive sentences are not inappropriate, and the trial court carefully tailored sentences specific to Stewart and the facts of the case.  Stewart's bullet-spraying *adventure* — i.e., mass shooting — had multiple victims, and their lives matter.  We find that the trial court was particularly considerate and appropriately lenient in ordering that the eight sentences for attempted murder — concerning eight separate victims — run concurrently.

## CONCLUSION

For the foregoing reasons, the convictions and sentences of Ikerryunt'a Stewart are **AFFIRMED**.

---

[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012) held that a mandatory life sentence for a juvenile violates the bar against cruel or unusual punishment.